IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IWANDA DICKEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 5:10-cv-356 (CAR) |
| CRAWFORD COUNTY SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Crawford County School District's Motion for

Summary Judgment [Doc. 30].  Plaintiff Iwanda Dickey contends Defendant unlawfully

discriminated against her on the basis of her race in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  After fully

considering the matter, Defendant's Motion for Summary Judgment [Doc. 30] is

**GRANTED in part** and **DENIED in part**.  Specifically, the Court finds that triable

issues of fact exist as to whether Defendant intentionally discriminated against

Plaintiff's race (1) when it issued her a two-year contract as Superintendent of the

Crawford County School District and (2) when it failed to renew her contract; thus,

1

Defendant's Motion for Summary Judgment is **DENIED** as to those claims.  However, Defendant is entitled to summary judgment on Plaintiff's claim Defendant discriminated against her by directing her to appoint John Douglas as her assistant superintendent; therefore Defendant's Motion for Summary Judgment is **GRANTED** as to that claim.

## BACKGROUND

Plaintiff, the first African-American school Superintendent for Defendant Crawford County School District ("School District"), claims that the School District unlawfully discriminated against her on the basis of her race when the Crawford County Board of Education (1) offered and issued her only a two-year contract for Superintendent, as opposed to a three-year contract like her Caucasian predecessors; (2) forced her to hire John Douglas (Caucasian) as her assistant superintendent; and (3) failed to renew her Superintendent contract.  The School District argues that all of Plaintiff's claims fail as a matter of law.

Aside from the time, place, and persons involved in the incidents giving rise to this case, the parties' accounts of material events differ.  Although Plaintiff's version of the facts may not be the "actual facts of the case," the Court is required at this stage of

the proceedings to credit Plaintiff's version if there is any evidence to support it.[1]  Thus, the relevant facts in the light most favorable to Plaintiff are as follows:

Plaintiff Iwanda Dickey worked for the School District for almost 30 years, from August of 1977, until December 2006.[2]  Over those nearly 30 years, Plaintiff rose through the ranks of the School District, from a school teacher, assistant principal, administrator, principal, and finally, for her last two years, to Superintendent.[3]

The School District is run by the Crawford County Board of Education ("School Board" or "Board").[4]  There are five members on the School Board, with three votes constituting a majority.[5]  The Board employs the Superintendent under a written contract.[6]  Because the School District operates on a fiscal year from July 1st to June 30th,[7] the School Board prefers to have employment contracts for Superintendents coincide with the school year, ending on either June 30th, at the end of the school year, or December 31st, at the end of the mid-year school break.

---

[1] *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 n. 14 (11th Cir. 2003) (quotation omitted).
[2] Pl. Depo., pp. 16-17 [Doc. 30-4].
[3] Pl. Affidavit, ¶¶ 7 & 8 [Doc. 32-5].
[4] Ralph Harris Affidavit, ¶ 3 [Doc. 30-8]; Patrice Walker Affidavit, ¶ 3 [Doc. 30-7]; William Walker Affidavit, ¶ 3 [Doc. 30-9]; Lee Sanders Affidavit, ¶ 3 [Doc. 30-10].
[5] Ralph Harris Affidavit, ¶ 3 [Doc. 30-8]; Patrice Walker Affidavit, ¶ 3 [Doc. 30-7]; William Walker Affidavit, ¶ 3 [Doc. 30-9]; Lee Sanders Affidavit, ¶ 3 [Doc. 30-10].
[6] Pl. Depo., p. 161 [Doc. 30-4]; O.C.G.A. § 20-2-101.
[7] Pl. Depo., p. 17 [Doc. 30-4].

Due to the early resignation of Dr. John Harper, the Superintendent immediately preceding Plaintiff, the School Board began interviewing candidates for the Superintendent position in May of 2004.[8]   The Board interviewed six potential candidates, including Plaintiff, who is African-American, and John Douglas, who is Caucasian.[9]   At the time of the interview, Plaintiff and Douglas both worked at Crawford County Middle School.   Plaintiff was the principal; Douglas was a math teacher.[10]   Plaintiff was Douglas' supervisor, and unlike Plaintiff with her years of experience in administration, Douglas had never worked in school administration.[11]

While interviewing for the Superintendent position, the Board discovered that the State of Georgia had allocated funding for an assistant superintendent position in Crawford County.[12]   Unlike the Superintendent position, the Board can neither independently hire an assistant superintendent nor initiate a recommendation for the position.   The assistant superintendent position must be filled like all other positions in the School District, requiring a majority vote by the Board on the Superintendent's recommendation.[13]

---

[8] *Id*. at p. 34.
[9] *Id*.
[10] Douglas Depo., p. 32 [Doc. 30-12].
[11] Pl. Affidavit, ¶ 14 [Doc. 32-5].
[12] Prior to the creation of the assistant superintendent position, curriculum directors acted as assistant superintendents.
[13] Pl. Depo., pp. 56, 58 [Doc. 30-5].

4

Initially, there was a split amongst the five School Board members as to whom they preferred for the Superintendent position.  Three preferred Plaintiff; two preferred Douglas.  In order to unanimously offer Plaintiff the position, the Board decided to give Douglas the assistant superintendent position.[14]   In June of 2004, the School Board offered and Plaintiff accepted a two-year, probationary contract for Superintendent, from June 4, 2004, through July 1, 2006, becoming the first African-American Superintendent of the School District.[15]

Prior to the early 1990s, the office of Superintendent was an elected, four-year position.   In 1993, the Georgia legislature adopted the current law whereby Superintendents are employed by the local board of education under written contracts for a term of not less than one year and not more than three years.[16]

Since the current law went into effect, the School Board had offered all of Plaintiff's Caucasian predecessors three-year contracts, with the exception being to accommodate a Superintendent's early departure, resulting in a contract for slightly less than three years.[17]   None of Plaintiff's Caucasian predecessors was issued a

---

[14] Raymond Dickey EEOC Affidavit, p. 3 [Doc. 32-16].
[15] Pl. Depo., p. 52 [Doc. 30-5].
[16] *See* O.C.G.A. § 20-2-10.1.
[17] Def's Interrogatory Responses, No. 8, pp. 9-10 [Doc. 32-20].

probationary contract.[18]  Ms. Sandra Neal served as Superintendent under two three-year contracts, beginning in 1997 until July 2003.[19]  However, in the fall of 2001, Ms. Neal left the position a year and a half early, in the middle of her second three-year contract.[20]  Thus, the School Board hired Dr. John Harper as Superintendent under a 31-month contract, from November 15, 2001, through July 1, 2004, the longest term practicable without having the contract expire mid-school year.[21]  Had Dr. Harper's contract been for three years, it would have expired mid-semester.  After approximately one year into his initial 31-month contract, the School Board renewed Dr. Harper's contract for a three-year term, beginning December 31, 2002, until December 29, 2005.[22]  Dr. Harper, however, resigned early in April of 2004, and the School Board hired Plaintiff that June.

At least one member of the School Board, Raymond Dickey,[23] opposed giving Plaintiff a two-year contract.[24]  Board Chair Judye Sellier explained that Plaintiff's two-year contract was a result of the "tumultuous experience" with Dr. Harper's early

---

[18] *Id.*
[19] Pl. Depo., pp. 29, 170 [Doc. 30-4].
[20] *Id.*
[21] *Id.* at p. 172.
[22] *Id.*
[23] At all times relevant to this case, Raymond Dickey and Plaintiff were no longer related.  Plaintiff had been married to Raymond Dickey's brother at one time.  Thus, Raymond Dickey is Plaintiff's former brother-in-law.  Raymond Dickey Depo., pp. 6-7 [Doc. 32-8].
[24] Raymond Dickey EEOC Affidavit, p. 3 [Doc. 32-14].

resignation.[25]  Moreover, Sellier stated that a two-year contract would still allow a new Superintendent enough time to become familiar with the School District and its operations, without committing the Board to a new Superintendent for the entire three years.[26]  Of course, when the School Board offered Plaintiff the two-year, probationary contract, she had been employed by the School District for almost 30 years.

According to Plaintiff, when she met with the Board to accept the Superintendent position, the Board directed her to name John Douglas as her assistant superintendent and conditioned her employment as Superintendent accordingly.[27]  Plaintiff understood that the Board could not force her to recommend Douglas, but "it was understood that [she] was to follow the instructions of the [S]chool [B]oard."[28]  On July 8, 2004, in keeping with hiring procedure, Plaintiff recommended Douglas to the Board for the position of assistant superintendent, and the Board voted in favor of her recommendation.[29]

In October of 2005, having served for more than a year as Superintendent, Plaintiff received an evaluation from the School Board with a satisfactory rating of 3.2

---

[25] Sellier EEOC Affidavit, p. 2 [Doc. 32-15].
[26] Sellier Depo., p. 24 [Doc. 30-6].
[27] Pl. Depo, pp. 34, 49 [Doc. 30-4]; Raymond Dickey EEOC Affidavit, p. 2 [Doc. 32-14].
[28] *Id.* at p. 58.
[29] *Id.* at p. 57.

on a scale of one to five.[30]   Board Chair Sellier met with Plaintiff to discuss the evaluation and address some goals and areas of improvement, but Sellier did not characterize any of these areas as deficiencies.[31]   Although the Board was required by Plaintiff's contract to issue written instructions in any areas of unsatisfactory performance, the Board did not provide Plaintiff with any written recommendations and/or directives to improve her performance.[32] The October 2005 evaluation was the only one she received as Superintendent.[33]

Although the School Board had renewed Dr. Harper's contract after he served as Superintendent for only one year, the School Board neither offered nor mentioned any renewal and/or extension of Plaintiff's contract.   Thus, without inquiring about or requesting an extension, Plaintiff believed her only choice was to retire.[34]

In November of 2005, seven months before her two-year contract was to expire, Plaintiff met with the School Board and requested a six-month extension of her contract, until December 31, 2006, to accumulate the necessary time she needed to fully vest in retirement with the Teacher's Retirement System of Georgia.[35]   According to Plaintiff,

---

[30] *Id.* at pp. 75 – 77.
[31] Pl. Affidavit, ¶¶ 30; 31-48 [Doc. 32-5].
[32] Pl. Affidavit, ¶ 74; Pl. Superintendent Contract [Doc. 30-16].
[33] Pl. Affidavit, ¶ 27; Pl. Superintendent Contract [Doc. 30-16].
[34] Pl. Affidavit, ¶ 59 [Doc. 32-5].
[35] Pl. Depo., pp. 90-92 [Doc. 30-4].

she requested this extension only when it "became clear" the Board would not renew her Superintendent contract.[36]   At the November 2005 meeting, the School Board verbally granted her request.

On December 1, 2005, Plaintiff wrote to School District attorney Sam Harben requesting that he draft an extension of her contract.  Plaintiff explained that she needed an extension to "have in all the time [she] needed for retirement"[37]  and told him that the Board had verbally agreed to extend her contract through the end of December 2006.

By February of 2006, four months before her contract expired, the Board had not extended her contract.  School Board Chair Sellier informed Plaintiff that the Board was inquiring whether it could purchase the time Plaintiff needed to retire with full benefits.[38]

At some point in time prior to the School Board meeting on March 14, 2006, Plaintiff and Sellier travelled to the Blue Bird bus company to look at school buses.[39]

---

[36] Pl. Affidavit, ¶ 59-60 [Doc. 30-5].
[37] Pl. Depo., pp. 91-2 [Doc. 30-4]; Letter to Attorney Ben Harben dated Dec. 1, 2005 [Doc. 30-17].
[38] Pl. Depo., pp. 145-46.
[39] *Id.* at pp. 93-94.

9

While at the Blue Bird facility, Plaintiff and Sellier casually talked about retirement, but Plaintiff did not tell Sellier she wanted to retire.[40]

By May of 2006, two months before her contract was to expire, the School Board still had not extended her contract, and teachers began donating their sick time to Plaintiff so that she could fully vest in the retirement plan. Board Chair Sellier also explored the possibility of using Plaintiff's acquired sick leave to make up the time she needed to fully vest.[41] At the May 2006 Board meeting, Board member Lee Sanders specifically asked Plaintiff if she wanted to retire,[42] and Plaintiff, in front of the entire Board, responded "no."[43]

A month later, at the June 5, 2006 Board meeting, the Board learned that over 83 hours of sick leave had been donated by teachers for Plaintiff's use to retire. Despite having directly told the Board that she did not want to retire a month earlier, the Board instructed Plaintiff to check with the Teachers Retirement System to inquire whether the donated sick hours could be used toward the time she needed to vest.[44] At this meeting "it was understood that [Plaintiff] was retiring."[45] Plaintiff, however, neither told the

---

[40] *Id*. at p. 95.
[41] *Id*. at pp. 99-101.
[42] *Id*. at pp. 113-14
[43] *Id*.
[44] *Id*. at pp. 103-04.
[45] *Id*.

Board that she did <u>not</u> want to retire nor asked that her contract be renewed or extended for any other reason than to fully vest in the retirement system.

By August of 2006, Plaintiff's initial contract had technically expired, and every alternative the Board had explored as a means for Plaintiff to acquire the time she to vest without extending her contract had proven futile. Thus, on August 8, 2006, Plaintiff signed an addendum to her contract extending her term as Superintendent until December 31, 2006.

At the School Board meeting on November 14, 2006, Board member Raymond Dickey moved to extend Plaintiff's contract expiring on December 31, 2006, for two more years.[46] The motion was seconded but ultimately failed by a 3-2 vote. After the November meeting, Board member Eddie Harris approached Plaintiff and asked her if she would consider taking another position in the School District if one was available; Plaintiff told him yes.[47] Around this time Plaintiff also contacted the Georgia Association of Educators ("GAE") for help regarding her contract.[48]

At the Board meeting on December 11, 2006, the last meeting before Plaintiff's contract expired, Board member Raymond Dickey again made a motion, seconded by

---

[46] *Id.* at p. 111.
[47] *Id.* at pp. 116-17.
[48] *Id.* at pp. 123-24.

another member, to renew Plaintiff's Superintendent contract.[49] A representative from GAE spoke to the Board on Plaintiff's behalf, in an effort to persuade the Board to renew Plaintiff's contract.[50]   The motion, however, again failed by a 3-2 vote, and Plaintiff's contract was not renewed.[51]  After the motion failed, Plaintiff asked the Board members why they did not renew her contract, but the Board did not respond.[52] Plaintiff then informed the School Board that she would continue working for the School District, as she was not one to "sit down."[53]   Plaintiff's retirement from the School District was effective on December 31, 2006.[54]

At the next School Board meeting in January 2007, the School Board appointed John Douglas -- Plaintiff's assistant superintendent and earlier candidate for Superintendent -- as interim superintendent.[55]   The School Board did not conduct a Superintendent search, and John Douglas was not required to re-apply for the position.[56]   He served as interim superintendent for 18 months prior to becoming

---

[49] Raymond Dickey Depo., p. 56 [Doc. 30-5].
[50] Pl. Depo. p 123 [Doc. 30-4].
[51] *Id.*
[52] *Id.* at pp. 128-29.
[53] *Id.*
[54] *Id.* at p. 18.
[55] Douglas Depo., p. 58 [Doc. 32-7].
[56] *Id.* at p. 59.

12

Superintendent with a three-year contract.[57]  After his first contract expired, the School

Board gave Douglas a second three-year contract.

After Plaintiff retired, she was required to remain out of work for one month per

the Teachers Retirement System of Georgia.[58]  In February 2007, Plaintiff was hired by

the Bibb County School District as an assistant superintendent.[59]

Plaintiff timely filed a charge of discrimination against Defendant with the Equal

Employment Opportunity Commission ("EEOC") against Defendant School District for

unlawful discrimination.  After receiving a Notice of Right to Sue from the EEOC,

Plaintiff filed this action against the School District contending the School Board

unlawfully discriminated against her on the basis of her race by (1) offering her a

contract for only two years when her Caucasian predecessors received contracts for

three years; (2) requiring her to hire John Douglas as her assistant superintendent; and

(3) failing to renew her Superintendent contract.  The School District has filed this

Motion for Summary Judgment contending each of Plaintiff's claims fail as a matter of

law.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

---

[57] *Id.* at pp. 14, 51.
[58] Pl. Depo., pp. 18-19 [Doc. 30-4].
[59] *Id.* at p. 95.

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[60]   A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[61]   Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[62]   When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[63]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[64]   If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of

---

[60] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986 ).

[61] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[62] *See id.* at 249-52.

[63] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[64] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

14

material fact.[65]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[66]

## DISCUSSION

### Failure to Exhaust Administrative Remedies

Prior to filing an action under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the Equal EEOC.[67] "[A] plaintiff's civil complaint remains 'limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"[68]

Defendant argues that Plaintiff's EEOC charge was based solely upon the non-renewal of her contract, not on the terms and conditions under which she was employed, and therefore Plaintiff failed to exhaust her administrative remedies with respect to any claim related to the length of her contract.  As this Court found in its Order on Defendant's motion to dismiss raising these same arguments, the discrimination claims regarding the terms and conditions of Plaintiff's employment raised in her civil complaint are "reasonably related" to the charges in the EEOC filing.[69]

---

[65] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[66] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[67] *Green v. Elixir Indus., Inc.*, 152 Fed. Appx. 838, 840 (11th Cir. 2005).
[68] *Id.* (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)).
[69] Order on Defendant's Motion to Dismiss [Doc. 13].

Thus, Plaintiff has exhausted her administrative remedies as to these claims, and the Court will address these claims on the merits.

## Merits of Discrimination Claims

Plaintiff brings her discrimination claims pursuant to Title VII and 42 U.S.C. § 1983.  When § 1983 is used as a "parallel remedy" to Title VII, as is the case here, the elements of the two causes of action are the same.[70]  Thus, the Court will address the Title VII claims with the understanding that the analysis applies to the § 1983 claims as well.  Title VII makes it unlawful for an employer to "fail or refuse to hire or [ ] discharge any individual, or otherwise [ ] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."[71]

Claims of race discrimination based on circumstantial evidence, as is the case here, are evaluated under the burden shifting framework developed in *McDonnell Douglas v. Green*.[72]  First, a plaintiff must establish a prima facie case, or "facts adequate to permit an inference of discrimination."[73]  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate,

---

[70] *See Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 n. 4 (11th Cir. 2003) (emphasis omitted); *Abel v. Dubberly*, 210 F.3d 1334, 1338 (11th Cir. 2000).

[71] 42 U.S.C. § 2000e-2(a)(1).

[72] 411 U.S. 792 (1973).

[73] *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

16

nondiscriminatory reason for its action.[74]  The burden then shifts back to the plaintiff who must show that the employer's proffered reasons for its actions were not the real reasons that motivated its conduct, but that the employer's proffered reasons were merely pretext for prohibited discriminatory conduct.[75]

To establish a prima facie case of race discrimination, Plaintiff must produce circumstantial evidence showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated Caucasian individual or was replaced by a person outside of her protected class.[76]  For all of Plaintiff's claims, the School District does not dispute that Plaintiff is a member of a protected class or that she was qualified for the Superintendent position.

### 1.  Requirement to Hire John Douglas as Assistant Superintendent

Because it is the only claim on which Defendant is entitled to summary judgment, the Court will first address Plaintiff's claim that the Board discriminated against her by requiring her to hire John Douglas as her assistant superintendent.  The Court concludes Plaintiff fails to establish her prima facie case because she cannot show hiring Douglas was an adverse employment action.

---

[74] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).
[75] *Id.* at 253.
[76] *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

To satisfy the adverse employment action prong, Plaintiff must show a "serious and material change in the terms, conditions, or privileges of employment."[77]   The Court must use an objective standard when assessing whether the employment action was "serious and material."[78] "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action."[79] Indeed, "the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way. . . . [T]he asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."[80]

Plaintiff provides no evidence that the appointment of Douglas had any tangible adverse effect on Plaintiff's employment, other than to offer her own subjective and speculative view that she would have selected an individual with whom she could work well and in whom she could trust.   In fact, the evidence shows that Douglas and Plaintiff did work well together.   Plaintiff gave him a positive evaluation and even specifically complimented him on his work with the finances.   Moreover, Plaintiff admits that Douglas was "fair and consistent."[81] Nowhere does the record establish that Plaintiff suffered a "materially adverse" change in the terms or conditions of her

---

[77] *Davis v. Town of Lake Park,* 245 F.3d 1232, 1238-39 (11th Cir. 2001).
[78] *Id*. at 1239.
[79] *Id*. at 1238.
[80] *Id*. at 1239.
[81] Pl. Depo., pp. 164-65 [Doc. 30-4].

employment by being "forced" to appoint Douglas as assistant superintendent.  Thus, because Plaintiff cannot establish she suffered an adverse employment action, she fails to establish her prima facie case of discrimination, and Defendant is entitled to summary judgment on this claim.  Defendant's Motion as to this claim is **GRANTED**.

### 1.  Length of Contract

Plaintiff next claims that the Board discriminated against her in the terms and conditions of her employment because, unlike all of her Caucasian predecessors, Defendant only offered her a two-year, probationary contract.

The School District first argues Plaintiff cannot prove a prima facie case because she never affirmatively asked for a contract longer than two years.  The School District analogizes this claim to a failure-to-hire claim in which to prove a prima facie case, the plaintiff is required to establish: (1) she is a member of a protected class, (2) she was qualified for the position <u>and applied for it</u>, (3) she was not considered for the position despite her qualifications, and (4) equally or less qualified individuals outside of her protected class were considered or hired for the position.[82]  The School District contends Plaintiff fails to establish the second element of the test because Plaintiff did not ask for a longer contract; thus, she did not apply for the job.

---

[82] *Underwood v. Perry County Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005).

The Court, however, is not persuaded by this analogy.  The School District points to *Siler v. Hancock County*, a failure-to-hire case in which this Court found that the plaintiff could not prove a prima facie case of discrimination because the plaintiff was complaining of the defendant's failure to hire him in positions for which he did not even apply.[83]  First, Plaintiff's claim here is fundamentally different.  Plaintiff is not claiming Defendant discriminatorily did not hire her. Indeed, Plaintiff applied for and received the Superintendent position. Plaintiff claims once she was hired, the Board discriminated against the terms and conditions of her employment because unlike her Caucasian predecessors, she received only a two-year contract.  Moreover, there is no evidence any previous Superintendent had to request a three-year contract, and thus the Court is not persuaded Plaintiff had any obligation to "apply" for a three-year contract.

The School District next argues that Plaintiff cannot establish her prima facie case because she cannot show that she was treated less favorably than a similarly situated Caucasian Superintendent.  Again, the Court disagrees. To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated to

---

[83] *See Siler v. Hancock County,* 510 F. Supp. 2d 1362 (M.D. Ga. 2007) (plaintiff failed to establish prima facie case of discrimination for failure to hire claim because he could not show he applied for the positions for which he claimed defendant failed to hire him).

the plaintiff "in all relevant respects" but treated differently.[84] Plaintiff meets this burden.  As Superintendent, Plaintiff held the same job title and responsibilities as her predecessors, and, like her predecessors, she was accountable to the School Board. Plaintiff's predecessors, however, were all Caucasians and, unlike Plaintiff, were all offered Superintendent contracts for longer periods of time – either three years (the maximum allowed under Georgia law) or only slightly less than three years to accommodate a mid-year resignation.  Indeed, of all the Superintendents appointed by the School District after the change in the law, only Plaintiff, the first African-American Superintendent, received a two-year, probationary contract.

The School District argues that Plaintiff fails to meet the similarly situated requirement because (1) she never asked for a longer contract and (2) the exact term of each Superintendent's contract varied.  First, as stated earlier, the record does not establish that Plaintiff's predecessors were either required to ask for a three year contract or that they in fact did ask for a three year contract.  Second, the fact that the exact term of each Superintendent's contract varied, does not make Plaintiff's predecessors insufficient comparators.  The evidence shows that any variances in the length of her predecessors' contracts were slight – at most only a few months less than

---

[84] *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quotation omitted).

three years – and given solely to accommodate mid-year resignations of prior Superintendents.  Thus, these distinctions do not make Plaintiff's predecessors invalid comparators.  The evidence viewed in the light most favorable to Plaintiff is sufficient to create a genuine issue of material fact as to whether Plaintiff was treated less favorably than her Caucasian predecessors as to the length of her contract.

Normally, because Plaintiff has established a genuine issue of material fact as to her prima facie case on her length of contract claim, the Court would next address whether the School District's legitimate, nondiscriminatory reason for offering Plaintiff a two-year contract is merely pretext for discrimination.  However, the School District proffers no argument as to its legitimate reasons for offering Plaintiff a two-year, probationary contract, or as to pretext, and this Court cannot and will not make the School District's arguments for it.[85]  Thus, the School District's Motion as to this claim is **DENIED**.

### 2.   Non-renewal of Plaintiff's contract

Finally, Plaintiff contends that the School District's decision not to renew her contract was unlawfully based on her race. The School District, however, claims their

---

[85] *See Dickerson v. Peake*, Case No. 5:08-CV-392 (CAR), Order on Defendant's Motion for Summary Judgment, p. 10 [Doc. 40] ("It is the responsibility of the movant to identify its arguments, not the responsibility of the Court to imagine and apply them without prompting.") (citations omitted).

decision was legitimately based on the Board's sincere belief that Plaintiff wanted to retire and its concerns about Plaintiff's performance.

The Court first finds that Plaintiff has established a prima facie case of discrimination.  It is undisputed that Plaintiff is a member of a protected class (African-American) and that she was qualified for the position of Superintendent.   Moreover, the Board's decision to not renew her contract constitutes an adverse employment action,[86] and, because Plaintiff was replaced by John Douglas, who is Caucasian, she clearly meets the last prong of her prima facie case.[87]

Because Plaintiff has established her prima facie case of race discrimination, the burden shifts to the School District to set forth a legitimate, non-discriminatory reason for the non-renewal of Plaintiff's contract.  The School District proffers two legitimate reasons -- its sincere belief that Plaintiff wanted to retire and its concerns about Plaintiff's performance as Superintendent.  Because these reasons are ones "that might

---

[86] Defendant's argument that Plaintiff did not suffer an adverse employment action because she was not terminated from her position is without merit.  Case law clearly supports non-renewal of a contract as an adverse employment action. *See, e.g., Brown v. School Bd. of Orange County, Fla.*, 469 Fed. App'x 859 (11th Cir. 2012); *Saridakis v. South Broward Hosp. Dist.*, 681 F. Supp. 2d 1338 (S.D. Fla. 2009) (and cases cited therein); *Johnson v. Bibb County Bd. of Educ.*, Case No. 5:07-CV-425 (CDL), 2009 WL 1885052, (M.D. Ga. June 29, 2009); *Silar v. Hancock County*, 510 F. Supp. 2d (M.D. Ga. 2007).

[87] The School District's argument that Plaintiff fails to establish she was treated less favorably than a similarly situated individual cannot counter Plaintiff's prima facie case. Again, case law makes clear that a plaintiff alleging discriminatory non-renewal of a contract may satisfy the fourth element of the prima facie test by demonstrating that she was "replaced by a person outside of his protected class *or* was treated less favorably than a similarly-situated individual outside his protected class." *Maynard*, 342 F.3d at 1289 (emphasis added). *See, e.g., Johnson, supra.*

motivate a reasonable employer,"[88] the School District has satisfied its "exceedingly light" burden of producing legitimate, non-discriminatory reasons for not renewing Plaintiff's contract.[89]

Because the Board has met its burden, Plaintiff must now present sufficient evidence to create a genuine issue of material fact that the Board's proffered legitimate reasons for non-renewal are merely pretext for race discrimination.  To establish pretext, a "plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this <u>either</u> directly by persuading the court that a discriminatory reason more likely motivated the employer <u>or</u> indirectly by showing that the employer's proffered explanation is unworthy of credence."[90]  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its

---

[88] *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

[89] *See Vessels v. Atlanta Ind. School Syst.*, 408 F.3d 763, 769-770 (11th Cir. 2005) (employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions).

[90] *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (emphasis added) (quotations and citation omitted).

actions."[91]   Evidence establishing pretext may include the same evidence initially offered to establish the prima facie case of discrimination.[92]

The School District first proffers that the Board did not renew Plaintiff's contract based on its sincere belief that Plaintiff wanted to retire.  Plaintiff's testimony that she did not tell the Board she wanted to retire is not enough to establish pretext: The critical inquiry is whether the Board sincerely believed that Plaintiff communicated a desire to retire.[93] Indeed, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."[94]   The School Board's sincere belief "must be rebutted with evidence the [School Board's] belief of the occurrences is insincere or unworthy of credence."[95]

Taking the evidence in the light most favorable to Plaintiff, the Court finds a genuine issue of material fact exists as to whether the Board sincerely believed Plaintiff

---

[91] *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quotations and citation omitted).

[92] *Wilson v. B.E. Aerospace*, 376 F.3d 1079, 1088 (11th Cir. 2004).

[93] *See Riley v. Birmingham Bd. of Educ.*, 154 Fed. Appx. 114, 117 (11th Cir. 2005) (plaintiff's evidence he did not make derogatory remarks to students not dispositive as to whether employer sincerely believed plaintiff made the remarks) (citing *Vessels*, 408 F.3d 763; *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991); and *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1256 (5th Cir. 1977) ("Even if [the employer] wrongly believed that [the Title VII claimant] violated this policy, if [the employer] acted on this belief it was not guilty of racial discrimination)).

[94] *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

[95] *Spann v. Cobb County Pretrial Court Services Agency*, 206 Fed. App'x 910, 912 (11th Cir. 2006) (citing *Vessels*, 408 F.3d at 771).

wanted to retire.  On the one hand, a reasonable jury could find that the Board held a sincere belief: Plaintiff only ever affirmatively requested an extension of her contract so that she could fully vest in the retirement plan; she never requested an extension for any other reason.  In addition, although Plaintiff did not tell Board Chair Sellier at the Blue Bird plant that she wanted to retire, Plaintiff did discuss retirement with her.[96] Indeed, Plaintiff admits that Sellier assumed Plaintiff wanted to retire and shared that information with the Board.[97]   Moreover, the Board inquired into at least three alternative ways for Plaintiff to acquire the time she needed to fully vest in the retirement system, including purchasing the time Plaintiff needed, having Plaintiff use her acquired sick leave, and using the teachers' donated sick leave.  A jury could interpret the Board's actions as helping Plaintiff achieve her desire to retire and therefore evidence supporting the Board's sincere belief Plaintiff wanted to retire.

On the other hand, there is also evidence from which a reasonable jury could find the Board did not sincerely belief that Plaintiff wanted to retire.  In the Spring of 2006, Plaintiff clearly informed the Board that she did not want to retire, stating "No" to

---

[96] Pl. Affidavit, ¶¶ 49, 52 [Doc. 32-5].
[97] Pl. Affidavit, ¶ 53 [Doc. 32-5] ("I also never told board members that I wanted to retire.  It was an assumption Ms. Sellier shared with the board.").

a direct question on this subject in front of the entire Board.[98]  Moreover, even after Plaintiff directly told the Board she did not want to retire, the Board continued its inquiries into alternative means by which Plaintiff could acquire the time she needed to vest in the retirement system instead of extending her contract. A reasonable jury could interpret this as evidence that it was the <u>Board's</u> desire to have Plaintiff retire, not Plaintiff's. Additionally, after the November 2006 meeting, Board member Eddie Harris asked Plaintiff if she would consider another position with the School District if one became available, and Plaintiff said yes.[99]  If a jury were to find that Harris was offering Plaintiff another position in lieu of retirement, such a proposition would indicate the Board knew she did not want to retire.  Moreover, when the Board voted against renewing Plaintiff's contract in December of 2006, Plaintiff directly asked the Board to explain why her contract was not renewed, and the Board did not respond.[100]  A reasonable jury could interpret the Board's silence to be indicative of the Board's lack of sincerity.  Based on this conflicting evidence, a jury must determine whether the Board had a sincere belief Plaintiff wanted to retire.

---

[98]*Id*. at ¶ 54. ("I informed the board that I did not state I wanted to retire.  At another time, board member Mr. Lee Sanders asked if I really wanted to retire.  I said, "No."  I was clear with the board that I did not want to retire.").

[99] *Id*. at ¶ 58.

[100] *Id*. at ¶ 68.

The second legitimate reason offered by the School District is the Board's "concerns about the Plaintiff's performance as Superintendent."[101] "In order to avoid summary judgment, [P]laintiff must produce sufficient evidence for a reasonable factfinder to conclude that <u>each</u> of [the School District's] proffered nondiscriminatory reasons is pretextual."[102] Plaintiff carries her burden. This is clearly the School District's secondary argument. The School District simply states, without any further elaboration, that "there had been some issues with Plaintiff's communication with Central Office staff or other key personnel of the School District."[103] In response, Plaintiff points to evidence sufficient to create a genuine issue of material fact that this proffered reason, too, is unworthy of credence. Plaintiff received one evaluation during her tenure as Superintendent, which yielded a satisfactory rating. Although Board Chair Sellier addressed some goals and issues with Plaintiff about her evaluation, the issues were not characterized as deficiencies, and the Board did not provide Plaintiff with any written recommendations and/or directives to improve her performance as required by her Superintendent contract. [104] Combined with her prima facie case, the

---

[101] Def. Memorandum in Support of Motion for Summary Judgment, p. 15 [Doc. 30-1].
[102] *Chapman*, 229 F.3d at 1037.
[103] Def. Memorandum in Support of Motion for Summary Judgment, p. 15 [Doc. 30-1].
[104] Pl. Affid., ¶¶ 30, 31-48 [Doc. 32-5].

Court finds a reasonable jury could also find this proffered reason unworthy of credence.

Although Plaintiff has successfully navigated the *McDonnell Douglas* framework, establishing genuine issues of material fact as to both her prima facie case of discrimination and as to pretext, the Court must determine if there is enough evidence from which a reasonable jury could determine that the School Board's non-renewal of Plaintiff's contract was based on her <u>race</u>. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[105] However, that "is not to say that such a showing by the plaintiff will <u>always</u> be adequate to sustain a jury's finding as to liability."[106]  The Court may still grant summary judgment to the employer if "no rational factfinder could conclude that the action was discriminatory."[107]

This Court cannot conclude as a matter of law that no rational factfinder could find the non-renewal of Plaintiff's contract discriminatory.  The record here neither "conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision," nor shows "abundant and uncontroverted independent evidence that no

---

[105] *Reeves v. Sanderson Plumbing Prod., Inc.* 530 U.S. 133, 148 (2000).
[106] *Id*. (emphasis in original).
[107] *Id*.

discrimination occurred."[108] Thus, the School District's Motion for Summary Judgment as to Plaintiff's non-renewal of contract claim is **DENIED**.

**CONCLUSION**

As set forth above, Defendant's Motion for Summary Judgment [Doc. 20] is **GRANTED in part** and **DENIED in part**.  Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim based on the Board "forcing" her to choose her assistant superintendent is **GRANTED**.  Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claims based on the length of her contract and the renewal of her contract is **DENIED**.

**SO ORDERED,** this 5th day of March, 2013.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH

---

[108] *Id.* (citations omitted).